# Law and Equity

IN THE

# SUPREME COURT

OF THE

# STATE OF NEW-YORK.

---

## INGRAHAM and wife vs. BALDWIN.

In an action under the code, to recover real property, corresponding to the former action of ejectment, when the wife is the owner of the fee, and the husband tenant by the curtesy initiate, the husband and wife may join in the action.

*It seems*, that if they are improperly joined, the objection should be taken by demurrer, and will be waived by answering over.

The defendant can not demur to a part, and answer another part, of a complaint, which contains but one cause of action, stated in one count.

In an action by the purchaser at a statute foreclosure of a mortgage, which was given in 1818, brought against a tenant in possession who was not the mortgagor, an omission to prove on the trial, that the mortgagor was twenty-five years old when he executed the mortgage, can not be urged on an appeal, unless the objection was taken on the trial.

*It seems* that no one but the mortgagor can take the objection.

Where the sale under a statute foreclosure took place in December, 1839, and the plaintiff was a purchaser in good faith, and brought his action against a tenant in possession, not the mortgagor, *it was held* that evidence tending to show that the mortgagor was *non compos mentis* when he executed the mortgage, was incompetent.

*It seems* that the defendant, having entered under a lease from the plaintiff's

grantor, and occupied as tenant seven or eight years, paying rent, and then having attorned to the plaintiff, and promised to pay him rent, can not dispute the plaintiff's title.

This was an action to recover real property, [ejectment,] and was commenced in April, 1849. The pleadings were framed under the code of that year. On the trial the plaintiffs gave in evidence a deed in fee from Samuel A. Gilbert, of the premises in question, to Sila Ingraham, wife of William S. Ingraham, (the plaintiffs,) dated 11th March, 1847, duly acknowledged and recorded; also a mortgage of the said premises, given by Bateman Wells to Russell Wells, dated 1st July, 1818, to secure the payment of $156,30, in one year from date with interest. At the time the mortgage was given, the mortgagor was in possession, and the defendant, his son-in law, was residing on the premises with him. Russell Wells, the mortgagee, died in 1838, having made his will in February, 1837, in which he appointed Leonard Wells and Samuel A. Gilbert executors. Gilbert renounced, and letters testamentary were issued by the surrogate to Leonard Wells alone. The mortgage was foreclosed at law by the executor. The first publication was on the 19th June, 1839, at which time $374,07 were claimed to be due. The sale took place on the 11th December, 1839, when Samuel A. Gilbert, the plaintiffs' grantor, became the purchaser, for 175 dollars, to whom a deed was given by the executor, reciting the proceedings. It was admitted that the plaintiffs were husband and wife, and that there was lawful issue of the marriage. Other facts were proved, but they are sufficiently detailed in the opinion.

*P. Potter*, for the appellant. I. The justice at the circuit erred in refusing to admit the proof that Bateman Wells, the mortgagor, at the time of signing the mortgage under which the plaintiff claims title, was a lunatic, and incompetent to know and understand the nature of a mortgage, and without capacity to execute the same. The case now stands precisely as if the proof offered had been given, and the justice had decided it not to be a defense. To authorize the foreclosure of a mortgage it must

Ingraham *v.* Baldwin.

contain therein a power to sell. (2 *R. S.* 545, § 1.) A lunatic can not execute a power. A person incompetent to know and understand the meaning of a mortgage, can not execute a power to sell. So of a person without capacity. "To constitute a valid mortgage, there must be a mortgagor, who must be a person capable of granting, conveying or assigning the land or thing mortgaged, and not disabled by any legal or natural impediment." (*Pow. on Mort.* 78, 79, 80. 2 *Kent's Com.* 450, 1, 2.) It requires as much or more capacity in an individual to execute a mortgage and power of sale, as to make and execute a devise. A will was set aside after forty years' possession under it, on account of the insanity of the devisor, although in prejudice of a purchaser. (*Squire* v. *Pershall,* 8 *Vin. Abr.* 169, *pl.* 13. *Pow. on Dev.* 71, 69.) The effect of a sale by a statute foreclosure, does not extend to, nor should it be construed to include a mortgage executed by an infant, feme covert, lunatic, or other person without legal capacity, and the foreclosure of such a mortgage could divest no title nor confer any. (2 *R. S.* 546, § 8.) In *Burnett* v. *Denniston,* (5 *John. Ch.* 41,) it was held by Kent, Ch., that the statute foreclosure of a mortgage, when the mortgagor was not 25 years of age, was void; for the reason that the mortgagor could not execute the power. Such a writing is no mortgage. It is not a contract. It is not even a writing, such as is required by the statute of frauds to divest one of title. It is not even as good as a forgery. (1 *Com. on Con.* 2.) A person *non compos* is not capable of entering into any agreement, for an agreement is an act of the understanding which such persons are incapable of. (*Bac. Abr. tit. Agreement, A.*) A derivative title can not be better than that from which it was derived. There is reason why a statute foreclosure, when applied to persons of capacity, should bar the equity of redemption of the mortgagor, his heirs and assigns, "because the notice is as well for the *party* as for the world, and he is thus given an opportunity to apply for relief, and if he stands by and suffers the sale to go on, the innocent purchaser should be protected." But to a lunatic no opportunity is given for relief. He has no power to apply. But the statute creates no other bar or disa-

bility than that of the equity of redemption.   That a foreclosure under the statute does not preclude all inquiry collaterally into the character of the mortgage; its consideration; its previous payment; the capacity of the mortgagor to execute the power, &c., is settled by various authorities.   (14 *John. R.* 443.   10 *Id.* 185.   5 *Hill,* 272.)   "A foreclosure of a mortgage under the statute is not founded upon any judgment or decree of any court.   It is the mere act of the mortgagee, who can not make that good and effectual by a sale which was unlawful and void in its inception."   (14 *John.* 443.)   So too it has been held that if the mortgagor was not twenty-five years of age (under the provision in R. L. of 1813) when he executed the mortgage, it is no bar to the equity of redemption.   (*Burnet* v. *Denniston,* 5 *John. Ch.* 35, 41.)   Certainly a young gentleman of 24, "of common understanding," is equal in capacity to a lunatic.

II. The justice at the circuit erred in not submitting the fact to the jury whether the mortgage was not paid, or presumed to be paid, at the time it was attempted to be foreclosed.   (*Jackson* v. *Sackett,* 7 *Wend.* 94, *and cases cited.*)   The mortgage was dated 1st July, 1818.   The sale was 11th December, 1839.   The mortgage was due 1st July, 1819.   The mortgage had therefore run twenty years, eleven months and nineteen days, before the notice of sale, and nineteen years eleven months and nineteen days after it became due, before the date of notice of sale, and twenty years, five months and eleven days after it was due, before the day of sale; nothing ever having been paid thereon.   (1.) The presumption arising from lapse of time is evidence for the jury.   (7 *Wend.* 100, 101, 102.)   This presumption at common law, arises from sixteen to twenty years.   (*Clark* v. *Hopkins,* 7 *John.* 556.)   If the principle contended for in this case be correct, then we propose to show that the case of *Jackson* v. *Slater,* (5 *Wend.* 295,) does not apply to this case.   Even in that case the court say, p. 297, the facts offered should have been received and submitted to the jury.   (2.) Payment extinguishes the debt, whether secured by judgment or mortgage.   And where the debt is extinguished, there remains no longer a power to sell.   And no title can be acquired even by a bona fide pur-

chaser under a paid-up or extinguished power. (*Per Bronson, J. in Wood* v. *Colvin*, 2 *Hill*, 567, *and cases cited.*) The case of *Jackson* v. *Slater*, (5 *Wend.* 297,) is explained, and the doctrine as contended for by the defendant in this action laid down, in the case of *Cameron* v. *Irwin*, (5 *Hill*, 275, 276, 277.) The provision in the revised laws of 1813, 373, § 5, under which this mortgage was foreclosed, is about the same as that under the present statute. If, as is held in *Jackson* v. *Slater*, (5 *Wend.* 296, 297,) a party has a right to offer evidence to rebut the presumption of payment after a foreclosure under the statute, surely the other party has a right to offer evidence to add to the presumption, or to have the question submitted to the jury, whether the presumption from lapse of time does not arise.

III. At the time of the commencement of this action the plaintiff had no legal title to the premises claimed in this action. (2 *R. S.* 302, 304, § 3.) The title to the premises remained in the mortgagor, or his heirs, until it was divested by such acts as the statute requires, to pass the title to some other person. It is not by a mere publication of the notice in a newspaper the requisite time, nor the posting, nor the act of the auctioneer, but some deed or note in writing. Making and filing, certifying and recording the proper affidavits, are a part of the requisites to pass title. The title can not be in abeyance; it is always in somebody. (*Jackson* v. *Catlin*, 2 *John.* 248. 2 *Caines*, 61.) This suit was commenced 24th of April, 1849. The affidavit of the auctioneer who officiated on the sale, was made 7th of December, 1849; eight months after the suit was commenced, and above ten years after the pretended sale. And if such act when performed could be deemed to relate back to the time of sale, it could not relate so as to give title to one who had no title at the time of the commencement of the action. That is, one can not acquire title after the commencement of the action to defeat a defense of no title in the plaintiff at the time the action is commenced.

IV. There was no legal foreclosure of the mortgage under which the plaintiffs claimed title. In all cases of statutory provisions to divest a party of title, the statute must be strictly

followed. In this case (the date of the mortgage being before the date of the revised statutes) the mortgagor was required to be over twenty-five years of age. (2 *R. S.* 545, § 1.) It is no where shown that he was of that age. The plaintiff was bound to show that fact. (7 *Hill*, 9 *and* 25, *per Beardsley, J.* 4 *Hill*, 76, 86.) The allegation in the notice of sale that he was more than twenty-one, proves nothing more than it alledges, and is an implied negative that he was only above that age.

V. The justice at the circuit erred in giving judgment, that upon the pleadings the plaintiff, Sila Ingraham, was entitled to the possession of the premises described in the complaint. The complaint alledges that the said Sila has owned the premises since the 11th day of March, 1847; that the said Sila is the wife, and has children by the said William S. Ingraham; that the said Sila is the owner in fee and entitled to possession of the premises. The defendant denies that the said Sila is entitled to the possession of the said premises. If the matters alledged in the complaint are true, that Sila is the owner of the fee; has been the owner since the 11th of March, 1847; is the wife, and has children by William S. Ingraham; then by the law she has no right to possession. Her husband is tenant by the curtesy, and he alone during that term is entitled to possession.

VI. William S. Ingraham is not entitled to judgment, upon the facts alledged in the complaint. There is no allegation in the complaint that he has any interest in the property, or that he is entitled to the possession.

*J. Wells*, for the respondent. I. The defendant's motion for judgment against Sila Ingraham on the pleadings, was properly denied. The pleadings show nothing contradicting the allegation in the complaint that she was entitled to the possession of the premises. (*Laws of* 1848, *ch.* 200.) The allegation is merely surplusage, and will be disregarded. (*Gould's Pl. ch.* 3, § 170.) The facts stated are sufficient to authorize the relief demanded. The plaintiffs were properly joined. (*Code*, § 114. 1 *Chit. Pl.* 33, 34, 85.) II. The defendant was not entitled to notice to quit, having disclaimed his tenancy and refused to pay

Ingraham *v.* Baldwin.

rent. (3 *Wend.* 337. 7 *Cowen,* 747. 6 *John.* 271. *Adams on Eject.* 104, 124, 5. 3 *John.* 223, 421. 2 *John. Ch.* 353. 2 *Phil. Ev.* 275.) III. It is not essential to the regularity or validity of a mortgage sale that the affidavits should be made immediately, or at all. The affidavits are merely one mode of evidence, and may be made and recorded at any time. The sale and other proceedings can be established by other evidence. (2 *R. S.* 547. 4 *Cowen,* 276, 7.) Besides, a deed was given. IV. The presumption of payment from lapse of time, of a sealed instrument, will not arise till the expiration of twenty years from the time the right of action accrues. (2 *R. S.* 301, § 48. 3 *Id.* 705, 2d ed. *Revisers' notes.*) Previous to the revised statutes, payment could be presumed in some cases within the twenty years, if attended with circumstances strengthening the presumption; (*see* 10 *John.* 381; 16 *Id.* 210;) but the statute in order to define and give precision to the doctrine of presumption, &c. has fixed it at twenty years. (*See Revisers' Notes, &c.*) There are no circumstances in this case in favor of any presumption of payment, while the facts that the mortgagor and mortgagee were brothers, that the defendant suggested that the mortgage should be foreclosed, &c. and the subsequent foreclosure and proceedings are circumstances which not only explain why the mortgage was not sooner foreclosed, but also establish its non-payment. The first publication of the notice in a statute foreclosure is equivalent and analogous to the commencement of an action, and if made within the twenty years, prevents the presumption of payment that would otherwise arise. (2 *R. S.* 545.) The foreclosure under the statute rebuts any presumption of payment arising from lapse of time, even after the twenty years. (5 *Wend.* 295. 5 *Hill,* 276. 2 *R. S.* 546, § 8.) When the evidence is not set forth, the court above will presume it was sufficient to sustain the decision. (3 *John.* 435. 3 *Hill,* 75. 12 *John.* 299.) V. The testimony on the part of the defendant, showing lunacy in the mortgagor, was properly excluded. The sale under the statute was equivalent to a foreclosure and sale under a decree in a court of equity, and can not be defeated to the prejudice of a bona fide purchaser. (10 *John.* 194. 14 *Id.* 435. 2 *R. S.*

Ingraham *v.* Baldwin.

545, § 8.   5 *Wend.* 295.   5 *Hill,* 273,   4 *Cowen,* 266.)   In the
case in 5 *Hill,* 273, the court put their decision expressly on the
ground that the mortgage had been extinguished by payment.
" There must be a power.   Payment extinguishes it, and the
case becomes the same as if none had ever been inserted in the
mortgage.   By payment the whole mortgage is extinct.   It
ceases to operate either at law or in equity, and the whole title
revests in the mortgagor.   To call it a mortgage is an abuse of
the word : it is no more than a blank."   The mortgage of a luna-
tic is not like a paid mortgage extinct and void; it is merely
voidable.   Blackstone says, " idiots and persons of non sane
mind and infants, &c. are not totally disabled either to convey
or purchase, but *sub modo* only.   For their conveyances, &c. are
voidable, but not actually void."   (2 *Black. Com.* 291.   *So also*
17 *Wend.* 119.)   " The doctrine that any deed of an infant or
person *non compos mentis* is absolutely void can not now be
maintained."   (17 *Wend.* 133, 134.   7 *Cowen,* 179.   *Story on
Cont.* § 43.   5 *Pick.* 217.   1 *J. J. Marsh.* 245.   2 *Greenl. Ev.*
§§ 369, 370.   13 *Mass. Rep.* 375.   6 *Paige,* 635.   1 *Edw. Ch.*
301.   2 *Id.* 549.)   The responsibility of an infant and a lunatic
upon their contracts is analogous and alike.   There is no good
reason for any distinction.   (*Story on Cont.* § 43.   17 *Wend.*
133.   1 *J. J. Marsh.* 245.)   The long silence and acquiescence
of the defendant, and the representations of the mortgagor, amount
to a ratification of the mortgage.   (*Story on Cont.* §§ 67, 72.)
The defendant's suggesting to Gilbert that the mortgage ought
to be foreclosed, ratified and confirmed it.   Their allowing it to
be foreclosed and the premises sold and then the defendant's
taking the place under Gilbert and paying him rent, his acqui-
escence when Gilbert informed him that the place had been given
to the plaintiffs, and his subsequent agreement to " rent it" of
the plaintiffs, are all acts fully ratifying and confirming the
mortgage and the proceedings under it.   The mortgage being
merely voidable, was, until it was disaffirmed, a subsisting mort-
gage which could be properly foreclosed.   After allowing it to
be foreclosed and the power of sale to be executed, the defend-
ant &c. are too late to disaffirm it,   (17 *Wend.* 133.   5 *Pick.*

Ingraham *v.* Baldwin.

217. 1 *J. J. Marsh.* 245. 13 *Mass. Rep.* 375.) The defend-
ant, after suggesting to Gilbert that the mortgage ought to be
foreclosed, and thus inducing him to buy the premises on the
sale, will be estopped from disputing Gilbert's title under such
sale. (3 *Hill*, 215. 8 *Wend.* 483. 6 *Hill*, 536.) A purchaser
for a valuable consideration without notice has a good title,
though he purchases of one who had obtained a conveyance by
fraud. (10 *John.* 185. 20 *Id.* 637, 646.) The rule is, that a
tenant can not dispute his landlord's title. (2 *Stark. Ev.* 305.
1 *Greenl.* § 25. 1 *Caines*, 444. *Cowen & Hill's Notes*, 201.)
So though the tenant take the lease while he is in possession.
(4 *Monroe*, 392, 400.) So where one, being in possession, takes
a contract to purchase, he is estopped from denying his vendor's
title. (7 *Cowen*, 717.) To the above rule there is an exception
in the case of an occupant of land who while in possession of the
land is induced, through imposition or by mistake, to acknowl-
edge the title of another and to agree to purchase of him or to
pay him rent; in such case, he will be allowed to explain his
mistake and show title out of the claimant or in himself. (7
*Wend.* 401. 12 *Id.* 57.) But if the occupant entered into pos-
session under the claimant, in no case will he be allowed to
dispute his title until after he has given up the possession.
(7 *Wend.* 401. 3 *John.* 499. 5 *Wend.* 246.) The fair infer-
ence from the testimony is that the defendant Baldwin took pos-
session under Gilbert. Hence he is precluded from denying
Gilbert's title. In order to have entitled him to show title out
of Gilbert, &c. he should first have shown an original possession
in himself, which he has failed to do. Although in prior pos-
session of the land, yet if with a full knowledge of the facts and
of his rights, and not under any mistake or misapprehension, he
acknowledges another's title, he is bound thereby and is after-
wards estopped from denying such title. (12 *Wend.* 57. 7 *Id.*
401. 14 *John.* 224. 7 *Cowen*, 717. 2 *Greenl. on Ev.* § 305.)
Gilbert was a purchaser in good faith. (2 *R. S.* 546, § 8.)
There is no pretense that he knew of the alledged lunacy of the
mortgagor. The indebtedness of the mortgagee to him, and the
allowance of the purchase money on that indebtedness, and the

subsequent settlement of his accounts with the estate, including the bid, was equivalent to a payment of so much money, and was a perfect consideration. (2 *Kent*, 464, 5. 20 *John.* 637, 646.) The arrangement between Gilbert and Leonard Wells was, if true as stated by Wells, in good faith. Wells states that he acted in good faith. There was no agreement not to bid against each other, nor any thing to prevent a fair competition among the bidders at the sale. The presumption is that neither of them wanted to buy the whole place, and hence they agreed to divide it after the sale. No evidence of any bad faith. The mortgagor and his heirs only can raise such objection. The defendant has no title or estate in the land as tenant by curtesy or otherwise, his wife never having had seisin. (1 *Cruise*, 160, 4 *Kent*, 29.)

*By the Court,* WILLARD, P. J. If the complaint be true, the plaintiff William S. Ingraham was tenant by the curtesy initiate of the premises, and his wife Sila was the owner of the fee. Assuming the facts to be so, the defendant's counsel moved for judgment for the defendant, on the ground that the husband and not the wife was entitled to the possession, and that, therefore, there was a misjoinder of parties.

I. The defendant was not entitled to the judgment for which he moved. · (1.) If there was a misjoinder of plaintiffs the defendant should have demurred. (*Code,* § 144, *sub.* 4.) The objection is deemed waived unless taken by demurrer or answer. (*Id.* § 148.) The defendant has relied on the objection in his answer, that upon the facts appearing in the complaint, there is an improper joinder of parties plaintiffs; that upon the facts stated, the action should have been brought in the name either of the husband or the wife, and not in the names of both. But in another part of the same answer, the defendant puts in issue the seisin of the wife, the marriage of the plaintiff, and the fact of their having issue. There is no rule of law which can uphold such a pleading. It is inconsistent with itself. One part of it is a demurrer, and the other part an answer denying the very facts conceded by the demurrer. It is well settled that a party

Ingraham *v.* Baldwin,

can not demur and answer to the same pleading. (*Spelman* v. *Weider*, 5 *How. Pr. Rep.* 5. *Stower* v. *Wheeler*, 4 *Id.* 373. *Cobb* v. *Frazer*, *Id* 413.) If the complaint contains separate counts, the defendant may demur to one and answer to another. But this complaint has but one count. The court could not both give judgment for the defendant on his issue of law, and try the issue of fact, raised upon the same pleading. (2.) The defendant asked for too much, when he moved for judgment for the defendant. Conceding that he had a right to insist on a misjoinder of plaintiffs in his answer, instead of demurring to the whole complaint for that cause, the only relief to which he was entitled upon his own premises, was to dismiss the complaint as to the wife, who he insists was not a proper party. (*Code,* § 274.) Having asked for too much, the judge was right in denying the motion. (3.) The action was well brought in the name of husband and wife. The husband was seised in right of his wife, of a life estate, as tenant by the curtesy initiate, and the wife, of the ultimate fee. These two estates constituted the whole quantity of interest, and to avoid multiplicity of actions, were well united in one action. (*Code,* §§ 111, 114, 119.) The rule which prevailed in chancery, as to parties, should govern in this case. The action, though an ejectment in one sense, was like a bill for relief; and therefore a judgment could not be complete and co-extensive with the whole interest, unless the husband and wife were united. (2 *Madd. Ch. Pr.* 143.)

II. It is urged for the first time, at the hearing, that the statute foreclosure was void because it does not appear that the mortgagor was twenty-five years of age when the mortgage was executed. The mortgage was dated in July, 1818. No objection was taken, either in the answer or on the trial, to the foreclosure, on the ground that the mortgagor was under twenty-five years old. Had it been taken then it could have been obviated, for it appeared that the mortgagor at the date of the mortgage was the father of the defendant's wife. Besides, this was a personal privilege like that of infancy, which none can raise but the mortgagor himself.

III. There was no ground for the court to submit to the jury

to presume that the mortgage was paid before foreclosure. Twenty years had not elapsed. Besides, the mortgage was foreclosed at the instance of the defendant himself.

IV. The main question in the case arose on the exclusion of the evidence offered by the defendant, to show that the mortgagor was *non compos mentis* at the time he executed the mortgage. The court excluded this evidence, upon the ground that the mortgage had been regularly foreclosed under the statute, and that Gilbert, the plaintiff's grantor, was not a party to the mortgage, but a purchaser in good faith. The sale took place under the statute foreclosure, on the 11th Dec. 1839. The law then in force enacted that every sale pursuant to a power as aforesaid, and conducted as therein prescribed, made to a purchaser in good faith, shall be equivalent to a foreclosure and sale, under the decree of a court of equity, so far only, as to be an entire bar to all claim or equity of redemption of the mortgagor, his heirs and representatives, and all persons claiming under him or them, by virtue of any title subsequent to such mortgage. (2 *R. S.* 546, § 8.)

The defendant was not in a condition to attack the mortgage under which Gilbert, the plaintiff's grantor, purchased, for two reasons. (1.) He took a lease under Gilbert, and occupied under him as tenant, for six or seven years, paying rent, and then attorned to his grantee, and agreed to pay rent to the plaintiffs. He was therefore estopped to deny the plaintiff's title. It is well settled that the defendant can not dispute the title of his landlord under which he entered. (2 *Stark. Ev.* 305. 1 *Greenl. Ev.* § 25. 1 *Cowen & Hill's Notes,* 201, *et seq. where the cases are collected.*) (2.) The statute foreclosure was equivalent to a decree in equity. (2 *R. S.* 546, § 8.) It can not be impeached to the prejudice of a bona fide purchaser. (*Jackson* v. *Henry,* 10 *John.* 185, 195. *Jackson* v. *Dominick,* 14 *Id.* 435. *Jackson* v. *Slater,* 5 *Wend.* 295. *Cameron* v. *Irwin,* 5 *Hill,* 272. 4 *Cowen,* 266.) Gilbert was a purchaser in good faith. He was not an executor of the will of Russell Wells, the mortgagor, although named as such in the will. The issuing of letters testamentary to Leonard Wells, the other executor named, operated

as a supersedeas to Gilbert. (2 *R. S.* 71, § 15. *Laws of* 1838, *p.* 103, *ch.* 149.)   It was not pretended that Gilbert knew that the mortgagor was a lunatic.   He *paid* the purchase money by a *discharge* of his debt against the estate of the mortgagee. This was equivalent to a payment of so much money.   (21 *Wend.* 499.   24 *Id.* 115.)   The mortgage was foreclosed, too, at the instance of the defendant, and he should therefore be estopped to impeach it.   The court permitted evidence to be given, tending to show that Gilbert was not a purchaser in good faith.   The alledged arrangement between the executor and Gilbert before the sale, to divide the property after the sale, shows no fraud in the sale itself.   The agreement was a lawful one, and did not tend to prejudice any one.   No competition was prevented; and if Gilbert did not do by Wells as he agreed, the latter has his remedy.   The testimony of Baker proves nothing, except that by Gilbert's purchase, Baker was prevented from buying the property at an under value.

A great variety of subordinate points were raised, but they were properly disposed of at the circuit.

Judgment affirmed.

[St. Lawrence General Term, September 1, 1851.   *Willard, Hand* and *Cady,* Justices.]